**In re Larry Washington CARLTON, Debtor.**

**Larry GRIBBLE, Plaintiff,**

v.

**Larry Washington CARLTON, Defendant.**

**Bankruptcy No. 381–01906. Adv. No. 381–0367.**

United States Bankruptcy Court, M.D. Tennessee.

June 9, 1982.

James T. McMillen, Murfreesboro, Tenn., for debtor.

William W. Burton, Murfreesboro, Tenn., for plaintiff.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This adversary proceeding was initiated by the plaintiff Larry Gribble's complaint to have a debt representing a judgment obtained by him against the debtor Larry Washington Carlton in the Circuit Court of Rutherford County, Tennessee, declared

non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). At the hearing of this matter, the court allowed the plaintiff to amend his complaint to include 11 U.S.C. § 523(a)(6) as a second ground of objection to the dischargeability of the debt. After consideration of the evidence presented at the hearing, stipulations, exhibits, briefs of the parties and the entire record, this court finds that the debt owed to the plaintiff is non-dischargeable under both 11 U.S.C. §§ 523(a)(4) and (6).

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The history of this case is both long and complicated. The relationship between the parties involved is, at best, acrimonious.

In April of 1974, three criminal warrants were issued by Rutherford County General Sessions Judge James W. Buckner alleging that the plaintiff Larry Gribble was mistreating and allowing several animals to run at large. To avoid further harm being done to the animals, Judge Buckner told Rutherford County Deputy Sheriff Randy Galloway to impound the twelve cows, two calves and eight horses belonging to Gribble. Judge Buckner further instructed Galloway to place these animals in the custody of Galloway's brother-in-law, the debtor Larry Carlton, who was charged with the responsibility of their care. Judge Buckner testified at the hearing in this court that he never gave the debtor permission to sell or dispose of these animals.

A preliminary hearing on the criminal charges pending against Gribble was held on May 9, 1974. At that time, Gribble was bound over to the Rutherford County Grand Jury on two charges of mistreatment of animals and one charge of permitting animals to run at large. These charges were subsequently nolled by the District Attorney General.

The debtor thereafter brought a civil action against Gribble in the General Sessions Court of Rutherford County for the expenses incurred in the pasturing of Gribble's animals and obtained a judgment against Gribble for $3,000.00. Gribble appealed this judgment to the Circuit Court of Rutherford County and filed a counter-complaint seeking damages for lost profits, negligence and breach of a bailment contract. On December 6, 1977, the jury in the Circuit Court action awarded Gribble a judgment against the debtor for $48,500.00. Chancellor Templeton reduced this verdict by remittitur to $42,100.00 on April 28, 1978, since the jury had considered punitive damages, which had not been charged by the Circuit Court, in arriving at its verdict.

The debtor filed this voluntary Chapter 7 bankruptcy petition on June 12, 1981. In his Statement of Schedules and Affairs, the debtor listed as a contested unsecured debt the judgment obtained by Gribble from the Circuit Court of Rutherford County. Gribble then commenced this adversary proceeding to determine the dischargeability of that debt.

At the hearing of this matter, Gribble estimated the value of the animals taken by Galloway as approximately $42,000.00. Both Gribble and his brother testified that they had searched in numerous places for the animals but had failed to find them. On one occasion, they went to the debtor and asked him where the animals were located. The debtor replied that "it was a big territory" and that he could not help them find these animals.

Although the debtor did not testify at the bankruptcy hearing, the debtor stated in a deposition taken on November 20, 1981, that he had sold the cattle and calves taken from Gribble to Bob Maxwell. The debtor admitted that he was not authorized by the court or anyone else to sell these animals. The debtor testified he placed Gribble's horses in the custody of Bob Bass who subsequently sold these horses without the debtor's permission. The debtor stated that he had not seen Bass since that time.

After careful consideration of the proof presented in this case, the court concludes that the debt owed by Carlton to Gribble is non-dischargeable under 11 U.S.C. § 523(a)(4). Section 523(a)(4) provides in pertinent part:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;"

■ The language "while acting in a fiduciary capacity" does not qualify the word "embezzlement" and therefore the court need not find that the debtor was acting in a fiduciary capacity in order to hold the debt non-dischargeable on the grounds of embezzlement. *Everwed Co. v. Ayers,* 25 B.R. 762 (Bkrtcy.M.D.Tenn.1982); *Maine Bonding & Casualty Co. v. Crook,* 13 B.R. 794, 798 (Bkrtcy.D.Me.1981); *American Family Insurance Group v. Gumieny,* 8 B.R. 602, 605 (Bkrtcy.E.D.Wis.1981); *Mullis v. Walker,* 7 B.R. 563, 564 (Bkrtcy.M.D.Ga. 1980); *Quarles Oil Co. v. Williams,* 2 C.B. C.2d 796, 801 (Bkrtcy.W.D.Va.1980); 3 Collier on Bankruptcy § 523.15, at 523–106 (15th ed. 1981). The legislative history of § 523(a)(4) reveals that the terms embezzlement and larceny were intended to make non-dischargeable any debt resulting from a conversion in which the debtor wilfully and maliciously intended to borrow property for a short period of time with no intent to inflict injury but on which injury was in fact inflicted. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364, *reprinted in* [1978] U.S.Code Cong. and Ad.News 5787, 5963, 6320.

■ Embezzlement is generally defined under federal law as "the fraudulent appropriation of property by a person to whom such property has been intrusted or into whose hands it has lawfully come." *Moore v. United States,* 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895). Both the fraudulent intent and the actual taking of the property may be proven by circumstantial evidence. *United States v. Stubin,* 446 F.2d 457, 461 (3rd Cir.1971); *United States v. Powell,* 413 F.2d 1037, 1038 (4th Cir.1969).

Under the law of Tennessee, § 39–4231 of the Tennessee Code defines the embezzlement of public money or property as follows:

*"Embezzlement of public money or property—Penalty.—*If any person charged with the collection, safekeeping, transfer, or disbursement of money or property belonging to the state or any county or any municipality in the state, use any part of said money or property by loan, investment, or otherwise, without authority of law, or convert any part thereof to his own use in any way whatever, he is guilty of embezzlement, and for every such act, upon conviction, shall be punished as in case of larceny, and fined in a sum equal to the money embezzled, to be applied in satisfaction thereof."

■ The term "public money or property" would include property, such as the animals in this case, in which title was permissibly laid in the state or county even though the property was held by the state or county as bailee and belonged to private persons. *Mays v. State,* 182 Tenn. 316, 186 S.W.2d 334, 336 (1945). Section 39–4233 of the Tennessee Code specifically provides that a person's refusal to return property placed in his custody pursuant to § 39–4231 constitutes prima facie evidence of embezzlement. Section 39–4233 states as follows:

*"Prima facie evidence of embezzlement.—*The refusal or willfull neglect of any public or private officer, clerk, agent, or other person mentioned in §§ 39–4231, 39–4232 to pay over the money or other property so placed in his care or custody, upon demand therefor by the proper person or authority entitled to receive the same, or as required by law, or the selling, mortgaging or pledging of any such property, or the withdrawing, loaning or depositing of any such moneys, by such officer or other person for his own profit or advantage, without express authority, shall in each case be prima facie evidence of the embezzlement thereof."

The circumstances in this case mandate a finding that the debtor was guilty of embezzlement as defined under either federal or Tennessee law. The debtor was entrusted by Judge Buckner of the General Sessions Court of Rutherford County with the custody and care of the animals confiscated from Gribble. The debtor admitted in his deposition that he sold the cows in question without the approval of the court and retained the proceeds from the sale for his own benefit. These facts clearly evidence the offense of embezzlement. The debtor further stated that an individual named Bob Bass sold the horses entrusted to the debtor without the debtor's authorization. The debtor, however, did not present the testimony of Bass or any other evidence to corroborate this sale. In any event, the debtor himself admitted that he placed the horses in Bass' custody. Throughout this proceeding, the debtor has repeatedly contended that the continued possession of these animals was costly to him and that he wished to rid himself of these animals as quickly as possible. If this is true, then the court cannot understand why the debtor did not take the simple expedient of returning these animals either to the court or to Gribble. In fact, both Gribble and his brother made several efforts to obtain these animals from the debtor. The only inference that can be drawn from the debtor's actions is that the debtor never intended to return any of these animals, including the horses. For these reasons, the court concludes that the debt in question is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

Although not necessary to the decision, the court would note that it also finds the debt non-dischargeable under 11 U.S.C. § 523(a)(6). Section 523(a)(6) provides in pertinent part:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . . .

(6) for wilfull and malicious injury by the debtor . . . to the property of another entity;"

This court has consistently held that a debt arising from the conversion of property is non-dischargeable under § 523(a)(6) "if the act of conversion is done deliberately and intentionally in knowing disregard of the rights of another, even though there may be an absence of special malice." *United States v. Anderson,* Case. No. 181–03033, Adv.Proc. No. 181–0659, at 7 (Bankr. Ct.M.D.Tenn. May 7, 1982). *Accord Farmers Bank v. McCloud,* 7 B.R. 819, 825–826 (Bkrtcy.M.D.Tenn.1980).

As stated previously, the debtor admitted in his deposition that he intentionally sold the cattle in his custody which he knew he did not own. And, although the debtor stated that he did not authorize Bob Bass to sell the horses put in the debtor's possession by the order of Judge Buckner, the debtor nevertheless knowingly placed these cattle in the care of Bass without informing either Judge Buckner or Gribble of this transfer. The debtor's action ultimately resulted in the loss of the horses to Gribble.

Accordingly, an order will be entered declaring the debt in question to be non-dischargeable.