In re Lonnie FREEMAN, et ux, Debtors.

**CHRYSLER CREDIT CORPORATION,**
**Plaintiff,**

v.

**Lonnie FREEMAN, Defendant.**

**Bankruptcy No. 582–00379–A.**
**Adv. No. 582–0110.**

United States Bankruptcy Court,
W.D. Louisiana,
Alexandria Division.

June 14, 1983.

Charles W. Salley and Michael S. Hubley, Lunn, Irion, Switzer, Johnson & Salley, Shreveport, La., for plaintiff.

Chatham H. Reed, Simon, Fitzgerald, Cooke & Reed, Shreveport, La., for defendant.

## FINDINGS OF FACT

LeROY SMALLENBERGER, Bankruptcy Judge.

Lonnie Freeman, debtor herein, operated a car dealership named Lonnie Freeman Chrysler-Plymouth-Dodge Truck, Inc. Mr. Freeman filed for bankruptcy under Chapter 7. The plaintiff, Chrysler Credit Corporation (CCC) was listed as an unsecured creditor. CCC initiated this adversary proceeding by objecting to the discharge of the debtor. The amount at stake is $62,664.28. CCC's objection is founded upon 11 U.S.C. Section 523(a)(4).

A hearing was conducted and testimony and evidence were taken. Afterwards it was discovered that the recording system had malfunctioned. Transcripts would be impossible to produce. Therefore, in addition to the briefs, the attorneys were requested to submit a summary of the facts.

CCC required the dealership to submit cumulative monthly reports encompassed in a form supplied by CCC entitled "Dealer Financial Statement". The report filed for January, 1980 shows Freeman to have a negative balance in his bank account of $74,931. Exhibit F–2. Freeman was able to report in December, 1980, that the overdraft had decreased but nonetheless was sizeable. Exhibit F–1. The evidence shows that CCC was not alarmed by the reports.

Freeman had accumulated a debt in excess of $49,000 representing vehicles sold by him but for which he had yet to remit the funds to CCC. At this point a meeting was had between Freeman and Tom Duval, CCC's field supervisor. The meeting resulted in Freeman giving CCC a series of checks totalling over $45,000. The checks were to be held by CCC against future sales to pay off the accumulated debt. The court finds that CCC knew or should have known that these checks were, at the time they were written, NSF. This knowledge would be available to CCC from the monthly reports.

January 31, 1981, Freeman closed the doors of his dealership. In the week prior to closing, he had sold nine vehicles and deposited the proceeds into the dealership bank account. Also deposited were the proceeds from the sale of used cars, which is not owed to CCC. Exhibit F–7. CCC did not receive any remittance from the sale of the nine units.

In the last two months of the dealership's existence, Freeman wrote a flurry of checks. To CCC, Freeman wrote checks totalling over $30,000.00, one of which bounced. Exhibit CC–3. To the Lonnie Freeman payroll there were checks amounting to $6,500.00. There was one check to his son, for extra labor, in the amount of $990.47 and another representing a bonus for Freeman, in the amount of $7,400.00. Both were dated January 16, 1981. Exhibits F–6, F–8 and CC–6.

CCC argues that this activity of Freeman in the latter days is proof positive of fraud, defalcation and embezzlement.

CCC argues that a fiduciary relationship existed between itself and Freeman by virtue of the "Collateral Chattel Mortgage and Pledge" dated May 7, 1979. Exhibit CC–4. Therein, it was agreed that the proceeds of sales would be the property of CCC and such proceeds would be kept for CCC by Freeman in a separate account apart from other funds held by Freeman.

## PROCEDURAL ISSUES

Defendant's brief objects that CCC has enlarged the pleadings by alleging embezzlement in its brief. Plaintiff's complaint does not so allege. A second objection to the enlargement of the pleadings arises out of plaintiff's "Supplemental Reply Brief" and "Defendant's Response". Therein, plaintiff argues that discharge should be denied on the basis of malicious and willful injury. 11 U.S.C. Section 523(a)(6).

The third paragraph of plaintiff's complaint states:

"That the above described sales 'out of trust' by LONNIE FREEMAN while acting in a fiduciary capacity for CHRYSLER CREDIT CORPORATION should operate to deny his discharge in that

amount, all in accordance with 11 USC Section 523 A (4) [sic]."

The first objection to the enlargement of the pleadings is overruled. It is clear that the issue of embezzlement is not raised explicitly in the complaint. However, embezzlement is part of Section 523(a)(4), which is cited in the complaint.

The complaint should contain a short and plain statement of the claim showing that the pleader is entitled to relief. Each averment of a pleading is to be simple, concise and direct; no technical forms of pleading are required. All pleadings are to be construed so as to do substantial justice. Federal Rules of Civil Procedure 8(a), (e) and (f).

The plaintiff should be confined to the cause of action set forth in his complaint. To do otherwise would lead to surprise and injustice. 61A Am.Jur. 2nd Section 373, pp. 360–61. It would be patently unfair to require the defendant to answer allegations and evidence not within the pleadings. *Armstrong Cork Co. vs. Lyons,* 366 F.2d 206 (8th Cir.1966). However, the rules of federal pleading are liberal. If a cause of action is mislabelled in the complaint but is suggested, such an error is immaterial and not likely to do injustice. *Alexander vs. Unification Church of America,* 634 F.2d 673 (2nd Cir.1980).

In this case, for the complaint not to mention specifically the allegation of embezzlement but to cite the statute containing it would not do substantial injustice.

As to the second objection, it is sustained. The issue of malicious and willful injury was not brought up in any pleading nor in plaintiff's first brief. First mention occurred in plaintiff's reply to defendant's brief. To consider this allegation today would do substantial injustice to defendant.

## CONCLUSIONS OF LAW

Defendant asserts that he is not liable individually for this corporate debt. This court finds Freeman to be individually liable. CCC is listed by Freeman as one of his creditors. Further, for reasons to be discussed later, Freeman made personal use of the sale proceeds. It is not alleged that the dealership wrongfully retained the money, but that Lonnie Freeman did so. This leads us to the issue of whether that debt owed by Freeman to CCC should be discharged in bankruptcy.

Bankruptcy exists to give debtors a fresh start in life. Denial of a debtor's discharge is not to be taken lightly and those exceptions to the operation of a discharge should be confined to those plainly expressed. *Gleason vs. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). These exceptions are to be construed liberally in favor of the debtor and strictly against the objecting creditor. The right to discharge is statutory. *In re Jones,* 490 F.2d 452 BLD ¶ 65150 (5th Cir.1974).

11 U.S.C. Section 523(a)(4) states:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

"(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny".

It should be noted that acting in a fiduciary capacity is essential only to the allegation of fraud or defalcation. The fiduciary capacity is not essential to embezzlement or larceny. The old law, Section 17a(4) of the Bankruptcy Act, excepted from discharge debts that "were created by [the debtor's] fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiducial capacity". With the old law, fiducial qualifies fraud embezzlement, misappropriation and defalcation. The law has since been amended so that fiduciary qualifies only fraud or defalcation. 3 Collier on Bankruptcy ¶ 523.-14[1](c) at pp 523–98 to 99. See also *Matter of Shuler.* 20 B.R. 163, 9 B.C.D. 119 (Bkrtcy.D.Idaho) affirmed at 21 B.R. 643.

The requirement that the debtor be acting in a fiduciary capacity refers to technical trusts and not those trusts implied by the law arising out of a contract. The

trust must exist prior to the act creating the debt. *Upshur vs. Briscoe,* 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891).

It is CCC's position that a technical trust was created by the Collateral Chattel Mortgage and Pledge. Exhibit CC–4. Therein, among other things, Freeman agreed to keep the sale proceeds for CCC in a separate account. It is clear from the testimony that this was not done. From the beginning, CCC was aware or should have been aware of this fact. CCC never took issue with Freeman over this matter. It was an accepted practice and that provision of the contract was ignored. Further, it is clear that CCC was aware Freeman did not at all times immediately forward proceeds to CCC. CCC did not admonish Freeman that he should not use the funds for his own purposes but should forward them to CCC.

■ A trust relationship did not exist between the parties. Therefore, CCC can not except to the discharge on the grounds of fraud or defalcation for the existence of a fiduciary relationship can not be established. *In re Weidman,* 18 B.R. 249 (Bkrtcy.E.D. Virginia, 1982); *In re Pehkonen,* 15 B.R. 577 (Bkrtcy.N.D.Iowa, 1981).

■ CCC expressly refuses to allege larceny or theft on the part of Freeman. Therefore, only embezzlement is left. Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted. The initial taking of the property is lawful. The subsequent possession becomes unlawful. 3 Collier on Bankruptcy ¶ 523.14[3] at p. 523–107.

Another court found embezzlement where the debtor sold property on consignment and used the sale proceeds for his own purposes. There the debtor had an affirmative duty to remit the sale proceeds to a certain creditor. The intent to defraud that creditor of the money was inferred from the facts. *Matter of Shuler.*

Although the parties at bar did not adhere rigidly to the procedure as agreed for the remittance of sale proceeds, the debtor knew he had an affirmative duty at some time to remit those funds to CCC. The

dealership had been failing for some time prior to the actual closing. Just before closing the dealership, Freeman wrote a flurry of checks. Many were for other creditors. Other than the nine vehicles sold in the final week of operation, there were few other sources of cash with which to pay these checks. Therefore, Freeman knew full well from whence that money had come and where it should go. It must be said that over $30,000 went to CCC. On the other hand, $6,500.00 paid the payroll. The court is not apprised how much went to the employees and how much went to the Freemans. A check for $7,400.00 was drawn as a bonus for Mr. Freeman and a check for $990.47 was drawn to pay for his son's "extra labor".

■ In the main, it is these last two checks that supply the facts which enable this court to infer that Freeman intended to defraud CCC of the money. The court finds that although no fiduciary relationship exists, Freeman embezzled funds properly belonging to CCC in the amount of $62,664.28.

The discharge of Lonnie Freeman is denied pursuant to 11 U.S.C. Section 523(a)(4).