**In re William D. JAMES, Debtor.**

**David W. BAILEY and William H. Grissom, Plaintiffs,**

v.

**William D. JAMES, Defendant.**

**Bankruptcy No. 1–81–00153.**
**Adv. No. 1–81–0054.**

United States Bankruptcy Court,
W.D. Kentucky.

Sept. 6, 1984.

Bobby H. Richardson, Glasgow, Ky., for plaintiffs.

Ray B. White, Bowling Green, Ky., for defendant.

Henry H. Dickinson, Glasgow, Ky., Trustee.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

The sole issue before the court on a stipulated record is whether cash shortages which developed in a real estate escrow account were the product of an "embezzlement" within the meaning of 11 U.S.C. § 523(a)(4), thus rendering the resulting debt nondischargeable in bankruptcy.

The issue involves a question of federal law[1] which is within the exclusive jurisdiction of the federal bankruptcy court.[2] In deciding the federal question we will rely on the established caselaw definition of embezzlement as the "fraudulent appropriation of property by a person to whom such property has been lawfully entrusted or into whose hands it has lawfully come."[3]

On July 22, 1977 the debtor, Bill James, a real estate broker, and the plaintiff in this action, a partnership between David Bailey and William Grissom, known as Bailey and Grissom Real Estate Brokers, entered into a contract with the heirs of the Andy Garvin Estate to sell, at public auction, the Beech Bend Amusement Park and surrounding acreage near Bowling Green, Kentucky.

The debtor and Bailey & Grissom (B & G) agreed to share equally the expenses and profits of this sale. All funds collected in connection with the Beech Bend sale were to be deposited in the debtor's real estate escrow account. The parties also agreed that all expenses of this sale would also be paid through that account. It has been stipulated that this procedure is customary in the real estate profession, when a sale involves more than one realty agency. Generally the local agent uses his escrow account rather than having each agency collect and pay its share of the income and expenses.

In order to promote and advertise this sale,[4] the debtor and B & G borrowed a total of $20,000 from the American National Bank and Trust Company of Bowling Green Kentucky. B & G and the debtor co-signed the American National note and each party agreed to pay 50% of the note. The note was to be paid through the debtor's real estate escrow account by withholding $20,000.00 from the sales commission paid to the debtor and B & G.

The Beech Bend Amusement Park was sold on February 3, 1978 for $1,449,000.00. The two real estate firms involved were paid a total of $62,450.00 in commissions and advertising expenses on the sale. The $62,450.00 was paid to the debtor and placed in his escrow account. Prior to his bankruptcy filing, the debtor paid the sum of $14,000.44 to B & G as their share of the net sales commission, retained $14,000.43 as his net sales commission and was to use the remaining $34,449.13 to pay off the American National loan and the remaining sale expenses.[5]

Later, it was discovered by B & G that the debtor had not repaid the American National loan. They contacted the debtor

1. Although both counsel for the debtor and the plaintiffs have cited and argued the Kentucky Criminal statute on embezzlement, KRS 514.-030, this court is not bound by its definition of embezzlement. A legislature's determination that certain conduct is criminal is not determinative of a dischargeability question in bankruptcy. *Matter of Storms*, 28 B.R. 761 (Bkrtcy.E.D.N.C.1983); *In re Kalmar*, 18 B.R. 343 (Bkrtcy.E.D.Pa.1982); *In re Duiser*, 12 B.R. 538 (Bkrtcy.W.D.Va.1981).

2. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *See also* 11 U.S.C. § 523(c) (a creditor must request a dischargeability determination by a federal bankruptcy court, of subsection 4 type debts or they will be discharged).

3. *Moore v. United States*, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed.2d 422 (1895); See also *In re Freeman*, 30 B.R. 704 (Bkrtcy.W.D.La.1982); *In re Crook*, 13 B.R. 794 (Bkrtcy.Me.1981).

4. The original sale of the Beech Bend property was scheduled for October 4, 1977, but was cancelled due to a dispute among the heirs. The Warren Circuit Court in deciding this dispute set a new sale date and ordered $10,000.00 be paid to the two real estate firms involved as compensation for the advertising expenses which they incurred in connection with the cancelled sale.

5. On September 22, 1978, the debtor prepared a statement entitled "Garvin Commission Disbursement" which showed a total of $62,450.00, collected by him and payment of: $20,000.00 to the American Bank; $2,299.13 in interest on "Escrow Rebate"; $2,000.00 for surveying; $150.00 for ground preparation; and $10,000.00 for advertising. This statement showed Bailey & Grissom receiving $14,000.44 and Bill James and Associates (the debtor) receiving $14,000.43 as their respective shares of the net sales commission.

and were assured that he would pay the note. On January 30, 1979, the debtor paid $10,000 on the American National note. Prior to filing for bankruptcy, the debtor also made several interest payments on this loan.

On April 8, 1981, B & G filed a complaint under KRS Chapter 324 against the debtor in an effort to collect $10,000 from the Kentucky Real Estate Education, Research and Recovery Fund. A hearing was held on this complaint before the Kentucky Real Estate Commission October 8, 1981.[6] The Commission dismissed the complaint for reasons not stated in the record before this court.

On April 21, 1981 the debtor, William James, filed his petition for bankruptcy. At that time the amount due on the American National note was approximately $11,010.49. Suit was subsequently filed by the bank against the debtor and B & G in October of 1981. On December 1, 1981, the firm of Bailey & Grissom paid the loan in full to the bank. The total amount due on the note as of that date was $11,917.13.

\* \* \* \* \* \*

Section 523(a)(4) of the Bankruptcy Code provides in part "[t]hat a discharge ... does not discharge an individual debtor from any debt—... (4) for fraud or defalcation while acting in a fiduciary capacity,

embezzlement or larceny...." The phrase "while acting in a fiduciary capacity" does not qualify the word "embezzlement" and therefore the court need not find that the debtor was acting in a fiduciary capacity in order to hold a debt nondischargeable on the grounds of embezzlement.[7]

A review of § 523(a)(4)'s legislative history reveals that the terms embezzlement and larceny include "in the category of nondischargeable debts a conversion under which the debtor willfully[8] and maliciously[9] intends to borrow property for a short period of time with *no intent to inflict injury but on which injury is in fact inflicted* (emphasis added)".[10]

■ In order to prove embezzlement, the plaintiffs must show that (a) the debtor appropriated funds for his own benefit, and (b) he did so with fraudulent intent or deceit.[11] Both the intent and actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence.[12]

■ After a careful consideration of the record, we find that the debtor's actions did constitute embezzlement as it is defined for purposes of § 523(a)(4). The debtor in this case had admitted that he received the payment due the plaintiffs and his real estate firm[13] from the sale of Beech Bend Park.

**6.** On August 28, 1981 the Hon. Steward Bland, then U.S. Bankruptcy Judge for the Western District of Kentucky, lifted the automatic stay to allow the hearing before the Kentucky Real Estate Commission to take place.

**7.** *In re Carlton,* 26 B.R. 202, 205 (Bkrtcy.M.D. Tenn.1981); *American Family Insurance Group v. Gumieny,* 8 B.R. 602, 605 (Bkrtcy.E.D.Wis. 1981); 3 Collier on Bankruptcy § 523.15, at 523–106 (15th ed. 1981).

**8.** The term willfully "denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental." *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed.2d 381 (1933).

**9.** Black's Law Dictionary defines "malicious" as something which is "wrongful and done intentionally without just cause or excuse" *Black's Law Dictionary* (5th ed. 1979).

**10.** H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 364, *reprinted in,* 1978 U.S.Code Cong. and Ad. News 5787, 5963, 6320. Although the quoted passage from the legislative history is unclear and contradictory, its language seems to indicate that the intent required for a debt to be nondischargeable under § 523(a)(4) is less than the intent required for an embezzlement conviction under state criminal statutes.

**11.** *In re Graziano,* 35 B.R. 589, 595 (Bkrtcy.E.D. N.Y.1983).

**12.** *United States v. Stubin,* 446 F.2d 457, 461 (3rd Cir.1971); *In re Carlton,* 26 B.R. at 205.

**13.** The debtor did business under the name Bill James & Associates.

The debtor also admits that he agreed to repay the American National loan from those proceeds and failed to do so even after he repeatedly reassured the plaintiffs that he would repay the note.[14] These facts clearly show that the debtor intentionally[15] and knowingly breached the agreement he had with the plaintiffs to repay the American National loan out of the joint commission from the Beech Bend Park sale which he collected. Although the court notes that the debtor's failure to repay this note was apparently caused by a combination of ill-fated investments and poor health, these factors can be given no weight by this court in its determination of dischargeability. In light of the compelling facts listed above, we conclude that the debt in question is nondischargeable under 11 U.S.C. § 523(a)(4).

■ As a final comment, we would again point out the limited scope of this opinion. The only issue we have decided is whether the debtor's actions in this case constituted embezzlement for the narrow purposes of 11 U.S.C. § 523(a)(4). This court did not consider, and expresses no opinion on, any issues relating to the debtor's alleged violations of Kentucky law. Those unanswered state law questions may be addressed to the appropriate state forum uninfluenced by any res judicata effect of our ruling today.

An appropriate order declaring the debt to be nondischargeable shall be put to record today. This is a final order.

**14.** It is important to note that the plaintiffs in this case constantly requested and received assurances that the debtor would pay the entire debt. In other cases involving § 523(a)(4) questions, courts have held that debtors who openly use funds which they hold for another, for their own purposes, without attempting to conceal those funds, are not guilty of embezzlement. *In re Crook*, 13 B.R. at 798. Courts have also held, in cases involving debtor/creditor and principal/agent relationships where the debtors are not requested to isolate or account for funds they are holding, that the debtors' subsequent appropriation of the funds will not generally amount to embezzlement. *Matter of Storms*, 28

B.R. at 765. In this case, however, the debtor repeatedly assured the creditor that he would repay the bank loan as per their agreement. The plaintiffs were in a joint venture relationship with the debtor and based on his promises, allowed him to individually collect funds which had been jointly earned by them in order to facilitate the payment of expenses connected with the sale of Beech Bend Park.

**15.** The intent to defraud a creditor can be inferred from the facts of a case, *In re Freeman*, 30 B.R. at 708; *Matter of Shuler*, 20 B.R. 163 (Bkrtcy.D.Idaho 1982).