In re Henry J. BEVILACQUA, Debtor.

Gary J. MOONAN, Plaintiff,

v.

Henry J. BEVILACQUA, Defendant.

Bankruptcy No. 84 B 11543.

Adv. No. 85–5001A.

United States Bankruptcy Court,
S.D. New York.

Sept. 24, 1985.

Marian Beeler, New York City, for debtor/defendant.

Jeffrey P. Moonan, Huntington, N.Y., for plaintiff.

## DECISION ON COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT

TINA L. BROZMAN, Bankruptcy Judge.

On November 2, 1984, Henry J. Bevilacqua ("Bevilacqua") filed for relief pursuant to chapter 7 of the Bankruptcy Code ("Code"). Gary J. Moonan ("Moonan") filed a proof of claim and commenced an adversary proceeding which sought determination that a certain debt arising out of Bevilacqua's sale of Moonan's car was nondischargeable. For the reasons set forth below, this court holds the debt nondischargeable pursuant to section 523(a)(4) of the Bankruptcy Code.

### FACTS

Bevilacqua was the president of Sunspeed Racing, Inc. ("Sunspeed"), a New York corporation engaged in the business of buying and selling racing cars and parts. He and his former wife held the majority of the shares, there being one minority shareholder. Through his involvement with a racing car association, Bevilacqua became acquainted with Moonan. Bevilacqua testified that theirs was a business relationship, while Moonan testified that he considered Bevilacqua a personal friend although he knew of Bevilacqua's affiliation with Sunspeed.

In June 1979, Moonan asked Bevilacqua to store his Royale RP–16 Formula Ford Car for shipment to California at a later date. Bevilacqua agreed. Moonan delivered the car to Bevilacqua at an unmarked garage in New York where Sunspeed conducted its business and gave Bevilacqua a check to cover the cost of shipping. Moonan testified that, as in unidentified past transactions, he had written the check to Bevilacqua individually.

In time, Moonan decided to sell the car instead of shipping it to California. Since Moonan was on the West Coast, Bevilacqua agreed to act as his agent. Moonan advertised in an automotive publication and a prospective buyer responded. Whereas the parties' accounts of how the sale transpired differ, they agree that Moonan authorized Bevilacqua to give the buyer possession of the car and to accept over $3,150.00 in payment on Moonan's behalf. The parties disagree as to what Bevilacqua was to do with the proceeds of the sale. Moonan testified that he had authorized Bevilacqua to convert the proceeds to guaranteed or insured travelers checks or a money order and send payment directly to him in California. Bevilacqua testified that when he told Moonan that the buyer had offered a third party check or money order, Moonan specifically instructed him to deposit the funds in Sunspeed's account and send a check drawn on that account.

Bevilacqua further testified that he deposited the money order in Sunspeed's account and waited for it to clear, however he was unable to produce records indicating that the proceeds of the sale were so deposited. Moonan testified that Bevilacqua later confided that he had written his former wife a check for the amount of the proceeds but Bevilacqua denied this.

After the money order cleared, Bevilacqua in August 1980 mailed Moonan a check drawn on Sunspeed's account in the full amount due from the sale of the car. The check was returned unpaid because the account was closed. Bevilacqua testified that the check bounced because of a clerical error but admitted that serious financial setbacks soon forced him to pay off as many of Sunspeed's debts as possible and

close up shop. By November 1980 Sunspeed had ceased operating.

Moonan pressed Bevilacqua to remit the proceeds from the sale of the car. In December 1980 Bevilacqua signed a promissory note reading as follows:

I, Henry Bevilacqua, residing at 382 Waverly Avenue, Brooklyn, New York owe to Gary Moonan residing at 10141 Samoa Avenue, Unit #19 Tujunga Ca. the sum of $3,050 resulting from the sale of Gary's Royale RP–16 Formula Ford. I promise to pay to Gary in cash 10 percent per annum more for loan of this amount. I promise to pay the full amount in the full amount (sic) percent in whole or in part in sums not less than 25(%) (sic) percent. I knowledge (sic) that this is a debt has (sic) been outstanding since the sale of the Royale which occurred in July of 1980. The amount to be paid is $4,350.00. First payment due of (sic) February 5, 1981. The balance to be paid within 6 months (July 5, 1981.)

Beneath Bevilacqua's signature and the date appear the words "Henry Bevilacqua Formerly of Sunspeed Racing." The parties agree that Bevilacqua signed the note individually, but Bevilacqua testified that he considered the debt a corporate rather than personal obligation and signed the note purely out of a sense of moral obligation.

Bevilacqua paid a few hundred dollars to Moonan before Moonan instituted proceedings in the New York State Courts to collect the debt. On July 29, 1982 Moonan obtained a $2,533.28 default judgment against Bevilacqua on the note in Civil Court, New York County. Bevilacqua later moved to vacate the judgment on the grounds that he was not properly served but his motion was denied on May 27, 1983.[1]

Moonan, contending that Bevilacqua had no claim to the proceeds of the sale of the car, argues that his failure to turn them over constitutes embezzlement and that the debt arising therefrom is nondischargeable under section 523(a)(4) of the Code. Bevilacqua argues that the debt is a corporate debt which cannot be deemed nondischargeable as against him.

DISCUSSION

Section 523(a) of the Code enumerates nine kinds of debts which are nondischargeable in bankruptcy. Central to the inquiry before this court is section 523(a)(4), which exempts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." A party asserting the nondischargeability of a debt has the burden of proving each element by clear and convincing evidence. *In re Seepes v. Schwartz (In re Schwartz)*, 45 B.R. 354, 357 (Bankr.S.D.N.Y.1985); *People v. Reinstein (In re Reinstein)*, 32 B.R. 885, 888 (Bankr.E.D.N.Y.1983); *In re National Bank of North America v. Newmark (In re Newmark)*, 20 B.R. 842, 853 (Bankr.E.D. N.Y.1982). Exceptions to dischargeability are strictly construed in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Great American Insurance Company v. Graziano (In re Graziano)*, 35 B.R. 589, 593 (Bankr.E.D.N.Y.1983).

The definition of the term "embezzlement" is to be determined under federal common law. *Graziano, supra*, 35 B.R. at 594; *Great American Insurance Company v. Storms (In re Storms)*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983). Common law has defined "embezzlement" as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895); *Bailey v. James (In re James)*, 42 B.R. 265, 266

---

**1.** Recognizing that *res judicata* does not preclude claims related to dischargeability actions, *Brown v. Felsen*, 442 U.S. 127, 138–39, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979), Moonan does not urge this court to find nondischargeability based thereon. Although a default judgment does not collaterally estop litigation of facts necessary to establish nondischargeability, the court may not entirely disregard a prior default judgment. *McGovern v. Capparelli (In re Capparelli)*, 33 B.R. 360, 363 (Bankr.S.D.N.Y. 1983).

**334**

(Bankr.W.D.Ky.1984); 3 Collier, *Bankruptcy,* 523.14(3) at 116 (15th ed. 1985).

▌ To prove embezzlement the claimant must show that the debtor appropriated the funds for his own purposes and that he did so with fraudulent intent or deceit. *Graziano, supra,* at 595. Unlike debts arising out of fraud or defalcation, those arising out of embezzlement need not involve a fiduciary. 3 Collier, *Bankruptcy,* ¶ 523.14 at 108; *Chrysler Credit Corporation v. Rebhan* 523.14 at 108; (*In re Rebhan* ), 45 B.R. 609, 614 (Bankr.S.D.Fla.1985).

In the case at bar there is no doubt that the proceeds were misappropriated. Bevilacqua was entrusted with Moonan's car and was authorized only to remit the proceeds of the sale to Moonan. Whether Moonan instructed Bevilacqua to deposit the money order in Sunspeed's account and wait for it to clear or simply remit an insured check or money order is immaterial since, in either event, Bevilacqua was clearly not authorized to use the proceeds. He wrote a bad check to Moonan and kept the funds, either for his own personal use or for that of his corporation. It is beyond dispute from the testimony adduced that neither Bevilacqua nor Sunspeed Racing had any entitlement whatsoever to the monies generated from the sale of Moonan's car. Bevilacqua, whether individually or as Sunspeed Racing, was acting as Moonan's agent and owed him a duty of loyalty, including the duty not to mix Moonan's funds with his own. F. Mechem, *Outlines of the Law of Agency,* §§ 500 and 539 (4th ed. 1952).

▌ Bevilacqua's argument that the debt which was incurred was a corporate debt begs the question. Although, in general, corporate officers and shareholders are not personally liable for the obligations of the corporation, *Lubrication & Maintenance, Inc. v. Union Resources Co., Inc.,* 522 F.Supp. 1078, 1082 (S.D.N.Y.1981), a corporate officer who injures third parties may not hide behind the corporation. *Buckley v. 112 Central Park South,* 285 App.Div. 331, 334, 136 N.Y.S.2d 233, 236 (1st Dep't 1954). In New York, an officer

who misappropriates corporate funds may be held personally liable to creditors of the corporation. *Hassett v. McColley (In re O.P.M. Leasing Services, Inc.),* 28 B.R. 740, 759 (Bankr.S.D.N.Y., 1983). He is liable for torts in which he participates or which he authorizes. *Connell v. Hayden,* 83 A.D.2d 30, 443 N.Y.S.2d 383 (2d Dep't 1981); *see* 19 C.J.S. Corporations § 849 *et seq.* Thus, if Bevilacqua misappropriated money, that he did so while acting in a corporate capacity cannot shield him from liability. *See Rebhan, supra,* 45 B.R. at 614. Nor can his failure to keep financial records. *See, e.g., Borg-Warner Acceptance Corporation v. Simmons, (In re Simmons),* 9 B.R. 62, 65 (Bankr.S.D.Fla. 1981).

▌ Absent the intent to defraud, the debtor's misapplication of funds does not rise to the level of embezzlement. *In re Mettetal,* 41 B.R. 80, 88 (Bankr.D.Tenn. 1984). However, circumstantial evidence may be used to support a finding of embezzlement. *Graziano, supra,* 35 B.R. at 596; *United States v. Stubin,* 446 F.2d 457, 461 (3d Cir.1971). That Bevilacqua waited about a month before mailing Moonan a check drawn on a closed account and used the funds for some other purpose creates a strong inference of deceit or fraudulent intent. Even if Bevilacqua intended to use the funds only temporarily, Moonan was deprived of his property and the resulting conversion constitutes embezzlement for purposes of section 523(a)(4). *James, supra* 42 B.R. 265, 267. Hence, the underlying debt is nondischargeable because it arose out of the embezzlement of the proceeds of the sale of Moonan's car. *See Applegate v. Shuler (In re Shuler ),* 20 B.R. 163 (Bankr.D.Idaho), aff'd 21 B.R. 643 (1982).

▌ The final issue is whether the note which Bevilacqua signed substituted a dischargeable debt for a nondischargeable one. Resolution of that question depends entirely on the purpose for which the note was given. *See In re Poss,* 23 B.R. 487, 489 (Bankr.E.D.Wis.1982). If a subsequent

note is merely evidence of the nondischargeable debt it does not affect the character of the debt. *United States Fidelity and Guaranty Company v. Russie, (In re Russie)*, 10 B.R. 832, (Bankr.N.D.Ill.1981). However, if the note is executed in satisfaction of the debt then the resulting debt is dischargeable. *Aetna Casualty and Surety Company v. Poss (In re Poss)*, 23 B.R. 487, 488–89 (Bankr.E.D.Wis.1982).

▮ In the instant case, the note actually states that "this is a debt has (sic) been outstanding since the sale of the Royale ..." and that the debt is one "resulting from the sale of Gary's Royale RP–16 Formula Ford ..." There is no implication in the language or the circumstances that the parties intended the note in satisfaction of the original debt. Accordingly, no alteration of the character of the underlying nondischargeable debt occurred.

SETTLE ORDER FOR JUDGMENT ON NOTICE.