**In re William E. HAMILTON, Nancy S. Hamilton Debtors.**

**Goodmar, Inc., Plaintiff,**

v.

**William E. Hamilton, Nancy S. Hamilton, Defendants.**

**Bankruptcy No. 02–51113(2).
Adversary No. 02–5607.**

United States Bankruptcy Court, W.D. Kentucky.

March 4, 2004.

Trevor H. Coleman, Murray, KY, for Debtors.

Deborah B. Simon, Paducah, KY, for Trustee.

## MEMORANDUM OPINION

THOMAS H. FULTON, Bankruptcy Judge.

THE MATTER before the Court in this adversary proceeding arises from the Complaint Objecting to Discharge filed by the Plaintiff, against the Debtors and Defendants, William E. Hamilton and Nancy S. Hamilton ("Defendants"). The Plaintiff seeks a denial of the discharge for the specific debts the Defendants owe the Plaintiff under 11 U.S.C. § 523(a)(4). The Plaintiff also seeks a denial of the general discharge of all debts owed by the Defendants under 11 U.S.C. § 727(a)(2), (4) and (5). The Defendants duly answered the Complaint and requested costs and attorneys fees.

Upon testimony of the Defendants; upon testimony of the principal of the Plaintiff; upon testimony of other relevant witnesses; upon the entire record in this case; and for the reasons set forth below, the Court finds in favor of the Defendants.

By virtue of 28 U.S.C. § 157(b)(2)(I) this is a core proceeding. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

Defendants and the Plaintiff entered into a Lease and Security Agreement pertaining to the Harbor Hill Marina ("the Marina") in Calloway County, Kentucky, on December 31, 1992. The Agreement provided that Defendants would lease the real estate and personal property used in the operation of the Marina. That Agreement was superseded by a second similar Security and Lease Agreement ("the Agreement") signed January 31, 2001. A U.C.C. Financing Statement and a copy of the Agreement was filed in the Office of the Kentucky Secretary of State. According to the Agreement, Defendants were to pay the Plaintiff $3000 per month and be responsible for taxes, insurance and maintenance, and Defendants gave the Plaintiff a security interest in the inventory and personal property used in operation of the business.

On February 19, 2002, the Plaintiff provided a Notice of Acceleration and Default to the Defendants, and on March 9, 2002, the Defendants voluntarily turned over possession of the leased premises to the Plaintiff. On July 23, 2002, the Defendants filed a voluntary Chapter 7 bankruptcy petition. The Defendants listed the Plaintiff as an unsecured creditor on their bankruptcy petition in the amount of $51,000. The Plaintiff alleged in its Complaint Objecting to Discharge *inter alia* that when the Defendants turned over possession of the Marina all the inventory and shop equipment of value had been removed; that junk and environmental contaminants that would devalue the property were left behind; and, that the building

was not properly maintained and was damaged. The Plaintiff also alleged that the Defendants did not report all of their assets on their bankruptcy petition, particularly a houseboat of substantial value and a golf cart.

The Court issued its Trial Order on March 11, 2003. In light of the specific allegations by the Plaintiff that the Defendants had hidden or not reported assets, the Order specifically directed the Trustee assigned in this case, Deborah Simon, to file any complaint under 11 U.S.C. § 727 by March 31, 2003. The Trustee, however, did not file any complaint related to these claims. The Court held a trial on December 16, 2003, at which the Court heard testimony from nine witnesses and received photographic and documentary evidence. The evidence focused on whether the Defendants removed valuable inventory in which the Plaintiff had a security interest, and whether the Defendants concealed the houseboat and golf cart as assets in their bankruptcy estate.

As to the inventory, Mr. Goodwin, the principal of the Plaintiff, testified that there were many items in the inventory at the Marina when he served notice of default on the Defendants, but that these items were missing when the Defendants turned over possession. Referring to the list of personal property attached to the Security Agreement, Mr. Goodwin identified several items that were not missing from the list when he retook possession. Mr. Goodwin testified that the remaining items on the list were missing or "completely destroyed." The Plaintiff introduced a photograph of a tarp covered trailer as evidence of inventory that was wrongly removed; however, Mr. Goodwin could not positively identify any of the items in the photograph.

Each of the Defendants testified that the trailer of items was actually personal junk and not the inventory referenced in the Security Agreement. They also testified that the various items in the photograph had been placed on a barge that subsequently sank. Mrs. Hamilton specifically testified that she and her husband had reviewed the list of items in the Security Agreement before they turned over possession of the premises, and that they made sure that those assets were still there. As to the golf cart, the Plaintiff introduced a photograph that purported to be an image of a golf cart that the Defendants had not listed among their assets in their bankruptcy petition. The Plaintiff offered no supporting testimony other than that the Defendants had been seen driving a golf cart near their residence after they relinquished possession of the Harbor Hill premises. The Defendants both testified that they had owned a golf cart at one time, but that it was stolen pre-petition. They also testified that their daughter owned a second similar golf cart, which they had used at their residence. Their daughter, Alisha Billingsley, testified that she had owned a golf cart at this time and that her parents had access to it.

With regard to the houseboat, a Chris Craft cruiser named *Feeling Blue*, the Plaintiff introduced into evidence the U.S. Coast Guard Abstract of Title dated February 21, 2003, that shows the Defendants as owners of the vessel. The Defendants, however, introduced evidence of a Bill of Sale transferring the vessel *Feeling Blue* from the Defendants to their daughter Alisha Billingsley, on April 10, 2001. Mr. Hamilton testified that in his experience of buying and selling boats it was common for the buyer to wait for some time before changing the Abstract of Title. Ms. Billingsley testified that she had owned the boat, was in the process of selling it, and was currently receiving payments for it. The Plaintiff also presented the testimony

of Bob Choate, who testified that Mr. Hamilton had offered to sell the boat in February or March of 2002, but could not verify whether Mr. Hamilton was selling the boat for his daughter or himself. Another witness for the Plaintiff, Thomas S. Brown, testified that he had purchased the boat from the daughter and had been making monthly payments to her since October 2003.

## CONCLUSIONS OF LAW

■ In the initial Complaint and in the Trial Brief, the Plaintiff did not specify under which provisions of 11 U.S.C. §§ 523 and 727 that it would pursue its claims. The Court ordered the parties to file Post–Trial Briefs specifically tying the evidence into the various code provisions that the parties were relying upon. In its Post–Trial Brief, the Plaintiff argued that the Defendants should be denied a discharge pursuant to 11 U.S.C. § 523(a)(4) and/or the Defendants should be denied a discharge pursuant to 11 U.S.C. §§ 727(a)(2), (4), or (5). On any objection to discharge, the burden of proof lies with the objecting party. Fed.R.Bankr.P. 4005.

### I.

■ Exceptions to discharge under the Bankruptcy Code are to be strictly construed in favor of the debtor. *In re Rembert* 141 F.3d 277, 281 (6th Cir.1998). *See also Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). The preponderance of the evidence standard applies to all exceptions from discharge under 11 U.S.C. § 523. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991). In § 523(a)(4), the Code lists three distinct acts of malfeasance that can create an exception to discharge, including "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C.

§ 523(a)(4). Nondischargeability claims under § 523(a)(4) must be examined with special care. *In re Graziano,* 35 B.R. 589, 593 (Bankr.E.D.N.Y.1983). Although the Plaintiff did not make an argument tying its evidence to one of these specific acts, the Court will consider each theory as it could be applied to the evidence that was presented.

■ To withhold a debt from discharge for "fraud or defalcation while acting in a fiduciary capacity," the Court must find that an express or technical trust existed between the parties. *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir.1996). The term fiduciary under section 523(a)(4) "does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity." *Id. (quoting Riden v. Sigler (In re Sigler)* 196 B.R. 762, 764 (Bankr.W.D.Ky.1996)). In the present case, the Plaintiff failed to present any evidence of an "express or technical" fiduciary relationship between the Defendants and the Plaintiff, and the Court cannot imply that the Security Agreement between the Defendants and the Plaintiff created such a relationship. The Plaintiff's claim fails under this theory.

■ The term "fiduciary capacity," however, does not modify the words "embezzlement" or "larceny." *In re James,* 42 B.R. 265, 267 (Bankr.W.D.Ky.1984). The Court need not find a fiduciary relationship existed to hold the debt nondischargeable on the grounds of embezzlement or larceny. *Id.* To succeed on a theory of embezzlement, the Plaintiff must prove that "(a) the Debtor[s] appropriated funds for [their] own benefit, and (b) [they] did so with fraudulent intent or deceit. Both the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence." *Id.* To succeed on a theory of larceny, the Plain-

tiff must show that the Defendants have "wrongfully and with fraudulent intent taken property from its owner." *In re Rose,* 934 F.2d 901, 903 (7th Cir.1991).

▮ The Plaintiff alleged that when the Defendants turned over possession of the Marina property, they misappropriated personal property that belonged to the Plaintiff. In *In re Thompson,* the reviewing court looked for factual findings of (1) what property was entrusted to the Debtor; and (2) what property was appropriated and how it was misused. *In re Thompson* 262 B.R. 407, 411 (6th Cir. BAP 2001). This Court will follow that analysis.

The Plaintiff provided a list of personal property inventory that was attached to the Security Agreement thus showing which property was originally entrusted to the Defendants. Mr. Goodwin identified the items that were on the premises when he retook possession. He also identified a photograph of a tarp-covered trailer that he assumed to have contained items of the missing personal property. The Defendants, however, both testified that the trailer contained personal items that belonged to them and not the business of the Marina. Other than these self-serving statements made by the respective parties, no evidence was introduced to show that the Defendants *actually and with fraudulent intent* misappropriated the personal property of the Plaintiff. The Court questions Mr. Goodwin's credibility in speculating, without any supporting evidence, that items of personal property such as a set of floating mooring slips for 12 boats with two walkways, or a floating fuel dock, valued at $12,000 and $8,500 respectively, were carted off by the Defendants. The Plaintiff did not present even circumstantial evidence that the Defendants actually and with fraudulent intent, misappropriated these items. Therefore, The Plaintiff's

claim under the theories of embezzlement or larceny fails.

## II.

▮ The Plaintiff has also claimed that the Defendants should be denied a general discharge pursuant to 11 U.S.C. §§ 727(a)(2), (4), and (5). The Plaintiff must prove each of the elements of a § 727 violation by a preponderance of the evidence. *In re Keeney,* 227 F.3d 679, 683 (6th Cir.2000). The Bankruptcy Code should be construed liberally in favor of the debtor. *Id.*

### A.

11 U.S.C. § 727(a)(2)(A) and (B) provide:

(a) The court shall grant a discharge, unless—

[](2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with the custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

▮ To be successful on a claim under subsection a(2)(A), the Plaintiff must prove two distinct elements: "(1) a disposition of property, such as concealment, and (2) a 'subjective' intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." *Keeney* at 683 (*quoting Hughes v. Lawson (In re Lawson),* 122 F.3d 1237, 1240 (9th Cir.1997)). Both the act of disposition (transfer, removal, destruction, mutilation, or concealment) and the intent

(to hinder, delay or defraud the creditor) must have occurred within one year prior to when the bankruptcy petition was filed. *Keeney* at 684. Under the "continuing concealment" doctrine, however, "a transfer made and recorded more than one year prior to filing may serve as evidence of the requisite act of concealment where the debtor retains a secret benefit of ownership in the transferred property within one year prior to filing." *Keeney* at 684 (*quoting Hughes*, 122 F.3d at 1240).

The Plaintiff has two claims that could be made pursuant to subsection 727(a)(2)(A).[1] First, The Plaintiff claimed that certain items of personal property had been misappropriated. This claim fails under subsection (a)(2)(A), however, for the same reasons that this claim failed under § 523(a)(4). Actual or "extrinsic" evidence of intent is required to prove a fraud claim under subsection 727(a)(2)(A). *Marine Midland Business Loans, Inc. v. Carey* (*In re Carey*) 938 F.2d 1073, 1077 (10th Cir.1991). Some courts look to circumstantial evidence or make inferences drawn from a course of conduct to find intent. *See generally In re Carey* 938 F.2d at 1077. In the case *sub judice,* however, the Plaintiff has failed to provide even circumstantial evidence from which this Court could infer intent upon the part of the Defendants to hinder, delay or defraud the creditors. Therefore, the Plaintiff's claim related to the personal property pursuant to § 727(a)(2)(A) must fail. The Plaintiff's claim related to the houseboat also fails under § 727(a)(2)(A). The Plaintiff claims the Defendants improperly transferred the houseboat to their daughter. Although this sale occurred more than one year prior to the filing of the bankruptcy petition, the transfer could still be a violation of § 727(a)(2)(A) under the

doctrine of "continuing concealment," if the Defendants continued to enjoy the benefit of the houseboat during this time. The facts, however, do not bear this out. The Defendants' daughter, Alisha Billingsley, testified that the houseboat had been given to her in April of 2001 to induce her and her husband to move to Kentucky and help her parents run the Marina. She also testified that she and her husband used the boat on the lake. The Court found Ms. Billingsley to be most sincere and credible. The Plaintiff produced no evidence that the Defendants continued to enjoy any benefit of the houseboat after the transfer, and therefore, the Plaintiff's claim fails under the doctrine of "continuing concealment."

Finally, the Plaintiff does not have a claim related to § 727(a)(2)(B) because it has not alleged that the Defendants improperly disposed of any property after their bankruptcy petition was filed. Therefore § 727(a)(2)(B) does not apply to any of the facts in this case.

## B.

11 U.S.C. § 727(a)(4) provides that a discharge will be denied if:

> [](4) the debtor knowingly and fraudulently, in or in conjunction with the case—
>
> (A) made a false oath or account;
>
> (B) presented or used a false claim;
>
> (C) gave, offered, received or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records

---

1. Again, the Court notes that despite specific instructions, the Plaintiff failed to tie the evidence to the supporting sections of the code or any case law authority.

and papers, relating to the debtor's property or financial affairs;

 A discharge is a privilege, not a right, granted to the honest but unfortunate debtor. *In re Farnsworth*, 283 B.R. 503, 507 (Bankr.W.D.Tenn.2002). Full disclosure is the cornerstone and capstone of any bankruptcy case and is necessary for the successful administration of a bankruptcy estate. Congress embodied this precept in section 727(a)(4)(A), the purpose of which is "to insure that adequate information is available to those interested in the administration of the bankruptcy estate without the need of examination or investigation to determine whether the information provided is true." *In re Dubrowsky*, 244 B.R. 560, 572 (E.D.N.Y.2000).

 To succeed on a claim under subsection (a)(4)(A), the Plaintiff must prove that: (1) the Defendants made a false statement under oath; (2) the statement was false; (3) the Defendants knew the statement was false; (4) the Defendants made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Keeney*, 227 F.3d at 685. Whether a debtor has a made a false oath under section 727(a)(4)(A) is a question of fact. *Id. See also* Fed.R.Bankr.P 8013. As under subsection (a)(2), the Court may look to circumstantial evidence or make inferences drawn from a course of conduct to find intent. *Id.*

 The Plaintiff has made two allegations of a false oath on the part of the Defendants. First, the Plaintiff alleges that Mrs. Hamilton perjured herself either during the examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("2004 Exam") or during the trial, because of her conflicting statements as to the value of the inventory. During the 2004 Exam, Mrs. Hamilton testified that she believed the inventory used at the Marina to be worth approximately $20,000. The Plaintiff points to the Defendants' bankruptcy petition identifying a loss of inventory valued at $10,000, which was located on a barge that sank. This allegation, however, begs the question of who owned the inventory that sank on the barge. The Plaintiff has failed to prove that the Defendants removed or otherwise deprived the Plaintiff of its property and has offered no evidence that the property that sank on the barge did not belong to the Defendants. Mrs. Hamilton testified that the personal property on the barge belonged to her and her husband. Therefore, she is providing value estimates on two different groups of personal property and not conflicting statements as to the same property.

 The Plaintiff has also alleged that the Defendants made a false statement during their 2004 Exam concerning the golf cart. In their 2004 Exam, the Defendants both stated that they had owned a golf cart at the Marina; that they had removed it when they relinquished possession of the premises; and that it was subsequently stolen before they filed their bankruptcy petition. The Plaintiff presented the testimony of Joey and Chanda Scott at trial, who testified that the Defendants had been seen driving a golf cart at the Defendant's residence some time after the bankruptcy petition was filed. The Plaintiff submits this as proof that the Defendants made a false statement on their bankruptcy petition because they did not report the golf cart as an asset.

At trial the Defendants testified that they used more than one golf cart at the Marina, one of which belonged to their daughter, Alisha Billingsley. They also testified that their golf cart had been stolen but they had continued to use the one

belonging to Mrs. Billingsley at their residence until it was sold. Ms. Billingsley testified, that she had owned a golf cart, which she had brought when her family moved to Kentucky. Furthermore, neither Joey or Chanda Scott could identify which golf cart they had seen the Defendants using at their residence. Perhaps the Defendants could have clarified these facts during the 2004 Exam as the Plaintiff suggests, however, even under such circumstances, "a debtor is entitled to discharge if false information is the result of mistake or inadvertence." *See Keeney* 227 F.3d at 683, *citing Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir.1997). The Plaintiff has provided no circumstantial evidence from which this Court could infer an actual false oath or account by the Defendants or an intent to defraud. Therefore, the Plaintiff's claims under 11 U.S.C. § 727(a)(4)(A) fail. Finally, the Plaintiff has neither alleged facts nor presented any evidence that would give rise to a claim under subsections (a)(4)(B),(C), or (D), and the Court will not consider those subsections here.

### C.

11 U.S.C. 727(a)(5) provides that discharge will be denied if:

> (5) the debtor has failed to explain satisfactorily, before determination of a denial discharge under this paragraph, any loss of assets or deficiency of assets to meet the Defendants liabilities;

The party objecting to a debtor's discharge has the initial burden of proof to identify the assets in question by appropriate allegations in the complaint and to show the debtor possessed the assets at one time.[2] *Olson v. Potter (In re Potter)*, 88 B.R. 843, 849 (Bankr.N.D.Ill. 1988). The burden then shifts to the debt-

or to "satisfactorily" explain the loss of assets. *Farmers National Bank v. Yokley (In re Yokley)* 61 B.R. 198, 200 (Bankr. W.D.Ky.1986). Unlike some other exceptions to discharge, subsection 727(a)(5) does not have an intent element in the burden of proof. *First Bank of New York v. Bodenstein, (In re Bodenstein)* 168 B.R. 23, 33 (Bankr.E.D.N.Y.1994).

What constitutes a "satisfactory" explanation is left to the discretion of the Court. *Potter* 88 B.R. at 849, *citing In re Baum*, 359 F.2d 811 (7th Cir.1966). *See also Bodenstein*, 168 B.R. at 33. "Section 727(a)(5) does not require that the explanation itself be meritorious, or that the loss or other disposition of assets be proper; it only requires that the explanation satisfactorily account for the disposition." *Bodenstein*, at 33.

The Plaintiff's claim that the Defendants misappropriated inventory fails, because the Court is satisfied with the Defendants explanation as to the disposition of that inventory. Therefore, the Plaintiff failed to establish a prima facie case as to this claim. The Plaintiff claimed that the Defendants failed to report the houseboat among their assets on the bankruptcy petition. The Court, however, finds the testimony of Alisha Billingsley to be a credible rebuttal of the Plaintiff's assertion. The Plaintiff also claimed that the Defendants failed to report a golf cart among their assets. The Plaintiff provided evidence that the Defendants were seen using a golf cart at their residence, after filing their bankruptcy petition. The Plaintiff did not provide sufficient evidence, however, that would show that the golf cart seen post-petition was the same one seen pre-petition.

---

**2.** Mere allegations of a failure to explain a loss or deficiency of assets would not make a

prima facie case. *See In re Martin*, 698 F.2d 883, 886 (7th Cir.1983).

While of limited evidentiary value, the Court ordered the Chapter 7 Trustee assigned to this case to investigate the allegations that assets had been concealed; however, the Trustee was apparently satisfied with the Defendants' explanation as she filed no complaint.[3] The Court, having heard all of the evidence presented at trial and considering the arguments and allegations by the Plaintiff and the Defendants in their briefs, is also satisfied with the Defendants' explanations. This Court finds the testimony of the Defendants to be credible, especially when supported by the testimony of Ms. Billingsley and Mr. Thomas. Therefore, the Plaintiff's claims pursuant to § 727(a)(5) fail.

## CONCLUSION

Based on the Findings of Fact and Conclusions of Law, this Court finds no reason to except this debt from discharge under 11 U.S.C. § 523, or to deny the Defendants a discharge under 11 U.S.C. § 727. Accordingly, the Court finds for the Defendants. The facts of the case, however, do not warrant the imposition of costs or attorneys fees against the Plaintiff. The Plaintiff did not bring frivolous claims but simply did not present sufficient evidence for the Court to rule in its favor. A separate final judgement shall be entered in accordance with the foregoing and Federal Rule of Bankruptcy Procedure 9021.

3. At least one court gave some limited weight to the fact that a Trustee investigating the matter found no claim. *In re Lombardi,* 263 B.R. 848, 857 (Bankr.S.D.Ohio.2001).