In re Paul Michael Biff FARNS-
WORTH a/k/a Ronnie Brad-
field, Debtor.

Tennessee Department of Corrections,
Plaintiff,

v.

Paul Michael Biff Farnsworth, a/k/a
Ronnie Bradfield, Defendant.

Bankruptcy No. 02–22831–K.
Adversary No. 02–0455.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Sept. 16, 2002.

Paul M. Biff Farnsworth, Memphis, TN, pro se.

George W. Stevenson, Memphis, TN, Chapter 7 Trustee.

## MEMORANDUM AND ORDER RE PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

Plaintiff, Tennessee Department of Corrections, by and through the Tennessee Attorney General ("TDOC"), has filed a motion for a judgment on the pleadings, pursuant to FED.R.BANKR.P. 7012(b),[1] aris-

ing out of the above-captioned adversary proceeding previously filed by TDOC against the defendant, the above-named chapter 7 debtor, Paul Michael Biff Farnsworth a/k/a Ronnie Bradfield ("Debtor"). TDOC ultimately seeks a judicial determination that the particular debts owed to it in the aggregate amount of $4,913.17 arising our of the debtor's prepetition criminal and related actions (*e.g.*, various court costs, fees, expenses, and a criminal fine for destroying state property) are nondischargeable under 11 U.S.C. § 523(a)(7) and § 523(a)(17).

By virtue of 28 U.S.C. § 157(b)(2)(I), this is a core proceeding. The court has subject matter jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a)–(b). Based on the pleadings and consideration of the case record as a whole, the following shall constitute the court's findings of fact and conclusions of law in accordance with FED. R.BANKR.P. 7052.

## I. Background Facts

The relevant background facts may be briefly summarized as follows. On February 4, 2002, the debtor, an inmate in the Tennessee state prison system, filed an original petition under chapter 7 of the Bankruptcy Code ("Code"). Debtor has been in prison during the entire administration of this bankruptcy case and remains incarcerated at the West Tennessee State Penitentiary located at Henning, Tennessee. As a result of the debtor's incarceration, he was excused without opposition from attending the statutory meeting of creditors under 11 U.S.C. § 341. In an effort to accommodate the debtor and allow the chapter 7 case to proceed notwithstanding his incarceration,

---

1. FED.R.BANKR.P. 7012(b) provides, in relevant part here, that FED.R.CIV.P. 12(c) applies in adversary proceedings.

this court, after notice and a hearing and without opposition, allowed the debtor's sister to appear and give the testimony for the debtor at the duly scheduled section 341 meeting of creditors.

On May 7, 2002, the meeting of creditors was held; and the appointed chapter 7 trustee later filed a no-asset report. Upon the debtor's payment of the $200.00 filing fee prescribed by 28 U.S.C. § 1930(a)(1) and the Judicial Conference Miscellaneous Bankruptcy Court Fee Schedule accompanying 28 U.S.C. § 1930(b), the debtor received his routine discharge on June 13, 2002, however, the dischargeability of the debts owed to TDOC were expressly reserved awaiting the outcome of this adversary proceeding filed by TDOC.[2]

It is noted in this case that the only creditors listed in the debtor's schedules appear in his Schedule F. All of the debts listed in Schedule F by the debtor apparently represent debts owed solely to various governmental units arising out of the criminal and related actions dating back to 1996 involving multiple state and federal courts, the Appellate Cost Center of the State of Tennessee, and the Tennessee Department of Corrections. The aggregate amount of the scheduled debts listed by the debtor in his Schedule F is approximately $17,363.76. Debtor listed no other creditors or debts in his Schedule D, E, G, or H. As noted, the debtor did not schedule typical or traditional consumer type debts. Accordingly, the debtor seemingly filed this chapter 7 case seeking to discharge substantial amounts of debts arising out of the prior court costs, fees, expenses, and fines incurred by him arising out of the criminal and related actions. TDOC, an agency or instrumentality of the

State of Tennessee,[3] seeks to have the specific fine, fees, costs, and expenses owed to it by the debtor excepted from his chapter 7 discharge under section 523(a)(7) and (17) of the Code.

While the debtor lists $17,363.76 in the aggregate of court costs, fees, fines, and expenses in his Schedule F, TDOC only seeks to except from discharge certain particular debts owed to it in the aggregate amount of $4,913.76 consisting of one criminal fine and multiple court costs, fees, and attendant expenses. More specifically, TDOC seeks a judicial determination that the particular debts owed to it by the debtor are nondischargeable under, for example, section 523(a)(7) for $43.50 arising out of the aforesaid criminal fine incurred by the debtor for destroying state property. According to the TDOC's original complaint herein and instant motion seeking a judgment on the pleadings, the debtor pled guilty to this offense and has now paid this fine. Since the debtor also has revealed to the court that the fine has been paid evidenced by trust fund deduction noted in a document entitled, *Disciplinary Decision Sentence Detail,* the court considers this particular debt (*i.e.,* this fine) extinguished and the dischargeability issue is thereby rendered moot.

TDOC also asserts that the debtor has incurred multiple nondischargeable debts under section 523(a)(17) including, for example, $406.89 in filing fees under the Prison Litigation Reform Act arising from prior complaints filed in the federal district courts; court costs totaling $4,113.73 arising from writs of execution in certain state court cases; and various expenses incurred as a result of the filing of the

---

**2.** It is noted that the routine chapter 7 discharge only discharges those debts under 11 U.S.C. § 523(a)(2), (4), (6), and (15). No judicial determination is routinely made for the other debts addressed under section 523(a). *See* 11 U.S.C. §§ 523(c) and 524(a).

**3.** *See* 11 U.S.C. § 101(27), discussed *infra.*

complaints and appeals in multiple state courts including $228.19 in postage expenses; $76.86 for copies; and $44.00 in notary services.

## II. The Ultimate Issue, Burden of Proof, and Standard of Proof

The narrow and ultimate question presented for judicial determination here is whether these particular fines, fees, costs, and expenses incurred by the debtor and owed to TDOC are nondischargeable under to 11 U.S.C. § 523(a)(7) and (17).

 The burden of proof in this adversary proceeding and instant motion seeking a judgment on the pleadings is on the plaintiff-creditor, TDOC, by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Exceptions to discharge are strictly construed against the objecting creditor and liberally in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

For the reasons mentioned below, this court finds and concludes, considering a totality of the particular facts and circumstances and applicable law, that the subject criminal court fine, fees, costs, and expenses incurred by the debtor in the amount of $4,869.67 arising out of the criminal actions are not subject to discharge under the laws of the Congress relating to bankruptcy. It is noted that the amount of the nondischargeable judgment here reflects a credit for the $43.50 fine that the debtor asserts he has paid arising out of his guilty plea previously entered for destroying state property. Therefore, the total nondischargeable judgment is $43.50 less than the requested amount of $4,913.17 set forth in the TDOC's complaint, discussed and clarified more fully, *infra.*

 It generally is noted that the legal effect of a bankruptcy discharge is grounded upon the public policy of freeing the honest, but unfortunate, debtor from the financial burdens of prepetition debts. *See, e.g., Williams v. United States Fidelity & Guar. Co.*, 236 U.S. 549, 554–55, 35 S.Ct. 289, 59 L.Ed. 713 (1915) *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). It is in the public and private interest to allow the honest, but unfortunate, debtor to begin a new opportunity in life with a clear field for the future free from the obligations and responsibilities consequent upon financial misfortunes. *Hunt* at 244, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230. *See also* S.Rep. No. 95–989, at 7 (1978), *reprinted in 1978 U.S.C.C.A.N. 5787, 5793* (indicating that the very heart of the fresh start provisions lies in the section 727 discharge).

 A bankruptcy discharge serves, in essence, to release an individual debtor's *in personam* dischargeable obligations and to permanently enjoin creditors from collecting discharged debts from the debtor. *See* 11 U.S.C. § 524(a). A discharge in bankruptcy, however, is not absolute. *See* 11 U.S.C. §§ 727(a) and 523(a). It is fundamental that a bankruptcy discharge is a privilege and not a constitutional right. *See, among others, In re Krohn*, 886 F.2d 123 (6th Cir.1989). Bankruptcy courts are charged with the duty to make sure the bankruptcy laws, including the debtor's discharge, are used and applied fairly and appropriately free from manipulation.

 It is noted that the Congress has statutorily excepted 18 particular categories of specific debts from a chapter 7 debtor's general discharge. The debtor's general discharge serves countervailing policy considerations while preserving the integrity of the discharge and the honest, but unfortunate, debtor's fresh start. *See, for example,* George H. Singer, *Section*

*523 of the Bankruptcy Code: The Fundamentals of Nondischargeability in Consumer Bankruptcy*, 71 AM.BANKR.L.J. 325, 326 (1997). Simply put, the nondischargeability of certain particular debts, as a policy consideration of the Congress, rises to a higher plane than the granting of a debtor's complete discharge and resulting fresh financial start. That is, a debtor may receive a general discharge, but one or more particular debts may be excepted from that general discharge. *See* 11 U.S.C. §§ 727(b) and 523(a).

■ For example, the Congress legislated via 11 U.S.C. § 523(a) that the following particular debts, among others, are not subject to a bankruptcy discharge: certain taxes; debts obtained by fraud, false pretenses, and false misrepresentations; certain unscheduled debts; larceny and embezzlement; alimony and child support; willful and malicious injury to the person or property of another; criminal fines, penalties, for forfeitures owed to the government; most student loans; previously scheduled debts that were judicially declared nondischargeable; and debts that arise from accidents proximately caused by the debtor while under the influence of drugs or alcohol. *See* 11 U.S.C § 523(a); *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It is also clear that the Congress did not intend for a debtor to avoid penal sanctions for wrongdoing by filing a chapter 7 case, and "any obligation to pay a fine, penalty, or forfeiture owed to a governmental unit will remain unaffected by the case." BENJAMIN WEINTRAUB AND ALAN N. RESNICK, BANKRUPTCY LAW MANUAL ¶ 3.09[7] (4th ed.1996)

(specifically citing that fines, like traffic fines, are not dischargeable).

Applicable for consideration in the instant case are two exceptions to discharge found in section 523(a). Paragraphs (7) and (17) of section 523(a) of the Code except from discharge debts, for example, arising out of the debtor's prepetition criminal fines or costs incurred by prisoner litigants who later file for chapter 7. The court will first address the dischargeability of the criminal fine under section 523(a)(7).

### III. 11 U.S.C. § 523(a)(7)

Specifically, section 523(a)(7) provides, in relevant part, that:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(7) to the extent such debt is for a *fine*, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss.... (emphasis added).

■ Section 523(a)(7) provides that a debt is excepted from discharge "to the extent such debt is for a *fine*, penalty, or forfeiture payable to and for the benefit of a governmental unit,[4] and is not compensation for actual pecuniary loss, other than a tax penalty." 11 U.S.C. 523(a)(7). (emphasis added). Thus, the three requirements for a nondischargeable debt under this provision are: (1) a "fine, penalty, or forfeiture"; (2) "payable to and for the benefit of a governmental unit"; and (3) that is "not compensation for actual pecuniary

---

4. By virtue of 11 U.S.C. § 101(27), a governmental unit means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Com-

monwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government. The Tennessee Attorney General represents the State in cases and proceedings such as this one when the State's interest is at stake.

loss." *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 362, 93 L.Ed.2d 216 (1986); *State of Tennessee v. Hollis,* 810 F.2d 106, 108 (6th Cir.1987); *In re Warfel,* 268 B.R. 205, 209 (9th Cir. BAP 2001).

Although no specific provisions concerning the dischargeability of criminal fines existed under the former Bankruptcy Act of 1898, the exception was well established in case law that criminal fines were not affected by a bankruptcy discharge in a liquidation case. *See, e.g., In re Abramson,* 210 F. 878 (2d Cir.1914); *In re Thomashefsky,* 51 F.2d 1040 (2d Cir.1931); *Singer* at 382. The United States Supreme Court in *Kelly v. Robinson* clarified that the traditional criminal fines were nondischargeable undersection 523(a)(7) when it expressly stated that "[s]ection 523(a)(7) protects [from discharge] traditional criminal fines." *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 362, 93 L.Ed.2d 216 (1986); Colliers at 523.13[1]; *In re Hardenberg,* 42 F.3d 986, 991 (6th Cir. 1994). The United States Supreme Court also recognized that section 523(a)(7) codified the judicially created exception to discharge for criminal fines that existed before the specific statutory provision was codified with the passage of the 1978 Code. *Kelly,* 107 S.Ct. at 362.

 It is clear that section 523(a)(7) creates a broad exception for governmentally imposed fines, penalties, and civil or criminal forfeitures as long as the debt does not represent compensation for actual or pecuniary loss. *Singer* at 384. The rendering of certain fines, penalties, or forfeitures payable to a governmental unit as nondischargeable obligations properly manifests the intent of the Congress to deter and punish debtors arising from certain proscribed conduct deemed offensive to society. *Singer* at 382.

This court has previously addressed the dischargeability of a fine owed to a governmental unit under section 523(a)(7). *See In re Wilson,* 31 B.R. 191 (Bankr. W.D.Tenn.1983). In that case the debtor attempted to discharge city traffic fines that were owed to a governmental unit (*i.e.,* a municipality). Relying on the plain text of section 523(a)(7), this court refused to allow the debtor to discharge the fine. Similar application of section 523(a)(7) should be applied here.

 Debtor pled guilty to a charge of destroying state property and incurred, *inter alia,* a fine in the amount of $43.50. TDOC asserts that this fine is nondischargeable under section 523(a)(7) because the particular debt fits perfectly within the scope of the statute because it is a fine owed to a governmental unit (*i.e.,* a State) that is not compensation for actual pecuniary loss. The fine in question is apparently a criminal fine that is not intended to compensate the state for its actual pecuniary loss, and the debtor failed to disprove any of the elements of the specific exception to discharge.

Debtor indicates that this fine has been paid evidenced by a deduction from his trust fund account. The apparent payment of this fine renders the issue of nondischargeability moot because this debt has been extinguished (*i.e.,* paid). In the event TDOC has failed to receive the deducted amount or payment has not been received, the court holds that the fine of $43.50 (or an appropriate lesser amount) is nondischargeable under section 523(a)(7) as a criminal fine falling perfectly within the confines of the particular exception to discharge as defined in section 523(a)(7). The filing fees, court costs, and expenses require application of another codified exception to discharge, discussed hereinafter.

*IV. 11 U.S.C. § 523(a)(17)*

 In the Omnibus Consolidated Rescissions and Appropriations Act of 1996

and Prison Litigation Reform Act of 1995, the Congress created an additional provision to section 523(a) to specifically except from discharge filing fees, costs, or expenses assessed by a court in a civil action or proceeding or appeal notwithstanding the debtor's assertion of poverty or status as a prisoner. 4 COLLIER ON BANKRUPTCY ¶ 523.23 at 523–107 (15th ed.1999); Pub.L. No. 104–134, H.R. 3019, Pub.L. No. 104–134 § 804(b); Pub.L. 101–140, 110 Stat 1327, HR 3019 (May 3, 1996). The addition of subsection (17) to section 523(a) intended to reduce the number of frivolous filings by prisoners in federal and state courts and to ensure that prisoners did not continue to use *in forma pauperis* provisions as a way to avoid filing fees incurred in litigating their own matters. *South Bend Community School Corp. v. Eggleston (In re Eggleston),* 215 B.R. 1012, 1017 n. 2 (N.D.Ind.1997) (citing 1996–MAY NATIONAL ASSOCIATION ATTORNEYS GENERAL: BANKRUPTCY BULLETIN 2, entitled, *Legislative Activities* ).

■ Although some confusion regarding the scope of the applicability of this exception to discharge may exist, it appears that the Congress intended section 523(a)(17) to statutorily except from discharge the filing fees or costs assessed in a case or appeal filed in federal and state courts assessed upon a petitioning prisoner notwithstanding the debtor's status as a prisoner or the debtor's poverty. *Id.*

Specifically, section 523(a)(17) provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(17) for a fee imposed by a court for the filing of a case, motion, complaint, or appeal, or for other costs and expenses assessed with respect to such filing, regardless of an assertion of poverty by the debtor under section 1915(b) or (f) of title 28, or the debtor's status as a prisoner, as defined in section 1915(h) of title 28.

■ At first glance, this statutory exception to discharge may seem extremely broad and applicable to all fees imposed by a court on any person or party in interest for various court filings when later attempts are made to discharge litigation costs in bankruptcy. Arguably, section 523(a)(17) may apply to all debtors regardless of their status as prisoners by focusing on the dominant/independent clause of section (17) and ignoring the antecedent/subordinate clause of section 523(a)(17) that begins with the word "regardless" that qualifies the costs appropriately as costs incurred by prisoners proceeding under the *in forma pauperis* provisions of the United States Code. *In re Tepfer,* 280 B.R. 628, 633 (N.D.Ill.2002).

Like other courts addressing this specific issue, this court does not consider the subordinate clause of section 523(a)(17) beginning with the word "regardless" as superfluous. Accordingly, this court holds that the subordinate clause must be read as qualifying the particular type of debt that the Congress intended to except from discharge—costs, fees, and expenses incurred by prisoner litigants. *See, e.g., In re Tepfer,* 280 B.R. 628, 633 (N.D.Ill.2002) (stating that a bedrock principle of statutory construction is to give effect to every term and part of the statute and not to render any part superfluous); *South Bend Community School Corp. v. Eggleston,* 215 B.R. 1012, 1017 (N.D.Ind.1997); *In re Hough,* 239 B.R. 412 (9th Cir. BAP 1999); *In re Tuttle,* 224 B.R. 606 (Bankr. W.D.Mich.1998).

Parties in interest (*e.g.,* judgment creditors) have unsuccessfully attempted to use this statutory provision to except costs and

fees incurred by parties other than an incarcerated debtor, but courts have held such costs and expenses do not fall squarely within the parameters of a section 523(a)(17).[5] This provision, however, is much narrower in scope and applies only to prisoners. *Eggleston,* 215 B.R. at 1017.

The underlying legislative history and relevant Congressional intent result in a finding here that this statutory provision was drafted solely for situations like the one in the instant case that involves costs, fees, and expenses incurred by prisoners filing various motions, complaints, or appeals. *Id.* It is clear that the Congress did not intend to make nondischargeable "the entire universe of litigation-related expenses—filing fees, attorney fees, sanctions, and costs," and in the event the Congress did intend to make such a broad exception to discharge, the "meager" legislative history of the provision would be expansive, detailed, explanatory, and free of potentially confusing references to the accompanying Prison Litigation Reform Act. *In re Tuttle,* 224 B.R. 606, 610 (Bankr. W.D.Mich.1998); *Tepfer,* 280 B.R. at 632;

*Hough* 239 B.R. at 415–16; *Eggleston,* 215 B.R. 1012, 1017–18.

It appears that this statutory provision was simply intended to except court costs, fees, and expenses brought by prisoners proceeding *in forma pauperis,* and the provision, in fact, is, as stated by some, poorly drafted as to its intended scope and effect. *Eggleston* 215 B.R. at 1017 n. 4 (denoting that section 523(a)(17) contains a "drafting error"); *see Hough* 239 B.R. at 414 (hinting that the poorly written exception to discharge under section 523(a)(7) amounts to "legislative malpractice"); *see also* H.R.Rep. No. 324, 105th Cong., 1st Sess. (1997), 1997 WL 664411 (October 21, 1997) (discussing the attempts in bankruptcy legislation to amend section 523(a)(17) to narrow its application in accordance with its original intent of limiting the scope of the exception to discharge to solely prisoners). As a matter of fact, the Congress has manifested an intent to clarify the provision and eliminate the confusion regarding section 523(a)(17) of the Code in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2001 that is currently on the brink of passage into law.[6]

---

5. *See, e.g., South Bend Community School Corp. v. Eggleston,* 215 B.R. 1012, 1017 (N.D.Ind.1997) (essentially the first court to address the scope and applicability of section 523(a)(17) holding that the exception only applied to costs and fees imposed upon prisoners filing cases, motions, complaints, or appeals); *In re Tepfer,* 280 B.R. 628 (N.D.Ill. 2002) (where judgment creditors unsuccessfully attempted to use the provision to except fees from the debtor's discharge under section 523(a)(17); *In re Hough,* 239 B.R. 412 (9th Cir. BAP 1999) (reversing a bankruptcy court's holding, *In re Hough,* 228 B.R. 264 (Bankr.D.Idaho 1998)) (erroneously holding that section 523(a)(17) applies to non-prisoners) that allowed judgment creditors to utilize the provision to except from discharge chapter 7 fee awards because the provision only applied to obligations such as fees or costs by prisoner litigants); *In re Tuttle,* 224 B.R. 606 (Bankr.W.D.Mich.1998) (holding that section

523(a)(17) applied only to court ordered costs if the debtor were a prisoner meeting the *in forma pauperis* provisions).

6. It parenthetically is noted that in the pending bankruptcy legislation (*i.e.,* the Conference Report on H.R. 333) that section 523(a)(17) would be amended to clarify and better articulate the legislative intent of this exception to discharge by inserting the following language in section 301 as follows: Section 523(a)(17) of title 11, United States Code, is amended—
 (1) by striking "by a court" and inserting "on a prisoner by any court";
 (2) by striking "section 1915(b) or (f)" and inserting "subsection (b) or (f)(2) of section 1915"; and
 (3) by inserting "(or a similar non-Federal law)" after "title 28" each place it appears
 The impact on the existing law intends to fix a drafting problem in § 523(a)(17) of the

■ Here, the type of debts the debtor listed in his Schedule F and seeks to discharge in this chapter 7 case are exactly the type of debts that the Congress intended to except from discharge under section 523(a)(17). *South Bend* at 1017–18 (specifically addressing the issue of whether the provision covered costs incurred by prisoners). Debtor incurred $406.89 in filing fees under the Prison Litigation Reform Act arising from complaints filed in federal district courts; court costs totaling $4,113.73 arising from writs of execution in state court cases; and various expenses incurred as a result of the filing of the complaints and appeals in multiple state courts including $228.19 in postage expenses; $76.86 for copies; and $44.00 in notary services. As noted, these debts are exactly the type of expenses the Congress intended section 523(a)(17) to expressly except from debtor's general discharge.

By virtue of the plain language and straightforward application of section 523(a)(17), the $406.89 in filing fees constitute a nondischargeable debt. Certainly, the statutory language in section 523(a)(17) stating that a *"fee imposed by a court for the filing of a case, motion, complaint, or appeal"* is perfectly exemplified by the filing fees such as the fees incurred here by the Debtor arising from the complaints he filed in federal district courts.

Similarly, the *court costs* totaling $4,113.73 manifested in the writs of execu-

tion and denoted as *"Court Costs"* on the writs filed in Bledsoe County, Tennessee must be the exact type of "costs" that the statute describes as *"other costs and expenses assessed with respect to such [prisoner] filing[s] . . . . "* 11 U.S.C. § 523(a)(17). Debtor argues that these writs represent a form of garnishment that the debtor can avoid utilizing his state exemptions.[7] Nevertheless, the court is convinced that the costs incurred by the debtor must be classified as the type of *costs* the statute intended to except from discharge, and the twelve writs of execution denoting various amounts of court costs actually totaling more than $4,113.73 issued between September 28, 1998, and February 27, 2000, exemplify the type of costs the provision intended to except from discharge since the costs were assessed with respect to the multiple filings involving the various actions filed by the debtor.

Finally, the court considers the *expenses* of $228.19 in postage expenses; $76.86 for copies; and $44.00 in notary services as also falling squarely within the confines of section 523(a)(17). These expenses are also nondischargeable because such charges according to the plain language of section 523(a)(17) describes *"expenses assessed with respect to such filing[s] "* by a prisoner involving a case, motion, complaint, or appeal regardless of the assertion of poverty under the *in forma pauperis* provision under 28 U.S.C. § 1915(b) and (f).[8] The plain language of the statute

---

Code by clarifying that this exception to discharge applies only to court costs for prisoners.

**7.** A writ of execution is an alternative to a garnishment. *Compare*, Fed.R.Bankr.P. 7069.

**8.** 28 U.S.C. § 1915 entitled, *Proceedings in forma pauperis*, states as follows:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal,

or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees

or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6–month period immediately preceding the filing of the complaint or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined. (3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

(b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.

(2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid. (3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action or an appeal of a civil action or criminal judgment.

(4) In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

(c) Upon the filing of an affidavit in accordance with subsections (a) and (b) and the prepayment of any partial filing fee as may be required under subsection (b), the court may direct payment by the United States of the expenses of (1) printing the record on appeal in any civil or criminal case, if such printing is required by the appellate court; (2) preparing a transcript of proceedings before a United States magistrate judge in any civil or criminal case, if such transcript is required by the district court, in the case

of proceedings conducted under section 636(b) of this title or under section 3401(b) of title 18, United States Code; and (3) printing the record on appeal if such printing is required by the appellate court, in the case of proceedings conducted pursuant to section 636(c) of this title. Such expenses shall be paid when authorized by the Director of the Administrative Office of the United States Courts.

(d) The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases.

(e)(1) The court may request an attorney to represent any person unable to afford counsel.

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—

(A) the allegation of poverty is untrue; or

(B) the action or appeal—

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

(f)(1) Judgment may be rendered for costs at the conclusion of the suit or action as in other proceedings, but the United States shall not be liable for any of the costs thus incurred. If the United States has paid the cost of a stenographic transcript or printed record for the prevailing party, the same shall be taxed in favor of the United States.

(2)(A) If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered.

(B) The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2).

(C) In no event shall the costs collected exceed the amount of the costs ordered by the court.

(g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may

clearly addresses and describes these expenses and simplifies the court's application of the facts to the statutory provision rendering the specific debt nondischargeable. Simply stated, the costs, fees, and expenses render the analysis one of basic statutory application to the facts in the case record.

Accordingly, based on all the foregoing and consideration of the entire case record as a whole, the court finds that the subject costs, fees, and expenses incurred by the debtor are nondischargeable under 11 U.S.C. § 523(a)(7) (subject to the foregoing discussion) and (17).

**IT IS ORDERED AND NOTICE IS HEREBY GIVEN:** That the instant motion seeking a judgment on the pleadings previously filed by the plaintiff, TDOC, involving the defendant the above-named debtor, Paul Micheal Biff Farnsworth a/k/a Ronnie Bradfield, results in a nondischargeable judgment in favor of TDOC for $4,913.17 (or an amount consistent with the credit the debtor should receive for paying the fine incurred of $43.50 which results in an aggregate, adjusted, nondischargeable judgment in the amount of $4,869.67 pursuant to the foregoing).

be granted, unless the prisoner is under imminent danger of serious physical injury. (h) As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.